## Speakman Estate No. 2

*J. Brooke Aker, Bruce L. Cantor* and *H. Ober Hess*, for appellant.

*Daniel L. Quinlan, Jr., Edward J. Ozorowski, Special Deputy Attorneys General,* for Commonwealth.

*Edwin S. Henry, Jr.,* for executor.

TAXIS, P. J., January 5, 1961.—This proceeding comes before the court on appeal from inheritance tax appraisement of the Commonwealth. The pivotal issue is whether a transfer was made in contemplation of death. Frank M. Speakman, settlor, died on August 2, 1956, at the age of 73. On July 10, 1956, 23 days prior to his death, he transferred securities and cash valued for inheritance tax purposes at $218,151.27 to the Tradesmens Bank and Trust Company under the terms of a deed of trust. Decedent's gross taxable estate, including these transfers, was appraised for inheritance tax purposes at $3,978,908.05.

The trust provides monthly annuities to be paid from income to certain named persons. Excess income, up to a maximum annual distribution to one person of $3,600, is payable to the annuitants. The balance of income, and after the death of all the annuitants, the principal, is payable in equal shares to the University of Pennsylvania and Temple University.

The beneficiaries named in the deed are decedent's only living brothers, Clarence and Maurice; his only living sisters, Lillian S. McClure, Elizabeth S. Talley and Annie S. Lawton; a nephew of decedent's wife, Frank M. Gimmi, and Catherine S. Robinson, the lady with whom decedent was keeping company after the death of his wife.

On October 27, 1959, the Inheritance Tax Division of the Department of Revenue filed an appraisement in which it proposed to include in decedent's gross taxable estate as a transfer in contemplation of death, the

value of assets transferred in trust by decedent under deed of July 10, 1956. The Provident Tradesmens Bank and Trust Company, successor by merger to Tradesmens Bank and Trust Company, trustee under the deed, filed its appeal from this appraisement, and the matter was certified to this court. A hearing was held on July 21, 1960.

The Act of June 20, 1919, P. L. 521, art. I, sec. 1, as amended, 72 PS §2301, provides, in part, as follows:

"A tax shall be, and is hereby, imposed upon the transfer of any property, real or personal, or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations in the following cases:

". . .

"(c) When the transfer is of property made by a resident, . . . in contemplation of death. . . .

"If such transfer is made within one year prior to the death of the grantor, vendor, or donor of a material part of his estate, or in the nature of a final disposition or distribution thereof, and without an adequate valuable consideration, it shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this clause."

The Commonwealth did not submit any testimony. Appellant properly assumed the burden of proving that the transfer was not made in contemplation of death. The evidence of appellant is uncontradicted and the following facts are satisfactorily proven:

Mr. Speakman was an actuary and a certified public accountant concerned mostly with insurance matters. He never indicated by either word or deed to any of the witnesses, consisting of his secretary for nine years prior to his death, a business associate for 35 years prior to his death, and a close companion in his last years of life, that he was contemplating death. On the contrary, Mr. Speakman was regular in his daily

business attendance except for vacation periods. He occasionally traveled to the offices of clients and attended insurance commissioners' conventions. He attended an insurance commissioners' convention in May 1956 in St. Louis, and was planning to attend such a convention in November 1956 in Miami. Mr. Speakman maintained his normal business activity until the end of July, 1956, and even told one witness that he was going to retire at 90, marry and move to Florida.

During the last years of his life, Mr. Speakman had been giving assistance to his sister, Lillian, his brother, Clarence, and his wife's nephew, Frank M. Gimmi, in the form of regular monthly checks. Although these relatives were beneficiaries of the trust and the terms of the trust provided for monthly annuities in amounts similar to the monthly checks, it is noted that the other four beneficiaries of the trust were not receiving regular monthly checks prior to July 10, 1956. However, Mr. Speakman told one witness prior to the creation of the trust that he was tired of sending checks to several of his relatives and was going to set up a trust fund to take care of them. In addition, the settlor expressed an intent to a representative of the trustee to continue a previously instituted pattern of contribution, adding the security of a trust. A first draft of the trust was submitted to Mr. Speakman on about June 20, 1956, and several drafts followed until Mr. Speakman considered it ready for execution on July 10, 1956.

During the month of July 1956, Mr. Speakman complained of pain in his arm and an attending physician on July 4, 1956, diagnosed a heart condition as the cause and prescribed medicine for the condition. A heart ailment finally caused his death.

Appellant argues that the presumption of death does not apply here because the transfer does not involve a material part of decedent's wealth. The assets which decedent transferred in trust on July 10,

1956, are valued, for inheritance tax purposes, at $218,151.27. The total estate, including the amount transferred, is $3,979,908.05 on the same basis of valuation. Therefore, the transfer which the Commonwealth seeks to tax represents less than six percent of decedent's estate. In Miller Estate, 10 Fiduc. Rep. 353, a transfer of approximately 12½ percent of a decedent's estate within one year of death was held not to be a transfer of a material part of the estate. The gift involved $33,000.

There is cogency in the argument that if 12½ percent of an estate is not a material part, six percent is not, and the burden of proving that the present transfer was "in contemplation of death" is on the Commonwealth. However, the court believes that even today and in spite of its ratio with respect to the base figure, $218,151.27 cannot be considered immaterial. This is not to say that the six percent ratio has no significance. Although the ratio under the present circumstances does not fall short of the statutory qualification of materiality in regard to the operation of the provided presumption, it does have value to appellant. The amount of the transfer did constitute a material part of decedent's estate, but it was such a part that could support an inference that it was not transferred "in contemplation of death." Thus, although the present six percent ratio does not abrogate the statutory presumption, it tends to weaken that presumption or strengthen the case of appellant in overcoming that presumption. There is authority for this approach. See Laub Estate, 48 Luz. 25, where the court reasons as follows:

"It has been urged that since the decedent's whole total estate amounted to $133,475.92, that the transfers in the amount of $43,500, did not constitute a material part of the decedent's estate as contemplated in the statute.

"We feel, however, that the amount of the transfer did constitute a material part of the decedent's estate but that it was such a part that could support an inference that it was not transferred 'in contemplation of death' ": 48 Luz., at page 29.

The words "contemplation of death" are defined in Price's Estate, 62 York 193, as follows:

" 'The words "contemplation of death" mean a present apprehension, from some existing bodily or mental condition or impending peril, creating a reasonable fear that death is near at hand; and this apprehension, so arising, must be the direct and animating cause of the transfer. If this apprehension, so arising, is absent, there is not that contemplation of death intended by the statute, especially when another adequate motive actuating the gift is shown' ": 62 York, at page 194.

"The factors to be considered in deciding upon the question of 'contemplation of death' have been referred to as: (1) Ascertainment whether transferor's primary motive in making the gift is the thought of death and a desire to anticipate the event; (2) what other motive decedent had in making the transfer; (3) the condition of body and mind of transferor; (4) his age; (5) his desire to be relieved of responsibility; (6) his desire to discharge any moral obligations; (7) his purpose to carry out some previously adopted policy with reference to the objects of his bounty; (8) the length of time elapsing between the gift and the death; (9) whether the gift was all of or a substantial portion of transferor's property": Fogelsanger Estate, 10 D. & C. 2d 578, at pages 585, 586.

The court is convinced that the primary motive in making the transfer here involved was a desire on the part of Mr. Speakman to continue a previously instituted pattern of contribution, adding the security of

a trust. The evidence clearly establishes a fixed and expressed purpose on the part of Mr. Speakman for some two or three years prior to death to make substantial gifts to the natural objects of his affection. Although not all of the beneficiaries of the trust were receiving checks from Mr. Speakman prior thereto, the trust still represents a continuation of a scheme of giving initiated years before death, merely adding several other beneficiaries. In this respect the present case is comparable to Fogelsanger Estate, supra, where a preconceived plan of giving was consummated within one year of death. A gift, such as the present one, which follows a pattern established in the past has been found on several occasions to be one which is not in contemplation of death. Cf. Staudt Estate, 75 D. & C. 121; Eshelman Estate, 8 Fiduc. Rep. 593; Dehon Estate, 76 D. & C. 265; Eshelman Estate, 53 Lanc. 335.

The condition of body and mind of the transferor was better than average for his age. Mr. Speakman maintained a normal life throughout 1956 and up to three days before his death. The heart condition which affected Mr. Speakman's health in July 1956 did not affect his activity. In this respect the present case is comparable to Hetrick Estate, 65 York 47, where a malady suffered in old age did not indicate contemplation of death. Decedent in Hetrick Estate was a physisian and continued to administer his financial affairs and treat patients after suffering a severe broken ankle which confined him to bed where he remained until his death.

Old age, like the condition of body and mind, is a factor to be considered, but only insofar as it affects the disposition of the transferor: Whalen Estate, 33 Schuyl. 70; Souber Estate, 64 York 115. Considering the activities of Mr. Speakman during 1956 and especially during July of that year, the only indication that he might have been contemplating death is the

fact that he was 73 years old and was suffering from a heart condition. In light of the circumstances, this is insufficient to make his transfer taxable.

The fact that the trust instrument was executed with deliberation and not in haste is also significant. A man contemplating death would not be inclined to insist upon the time-consuming process of redrafting trust instruments.

Only three cases cited by the Commonwealth contain findings of gifts in contemplation of death. In Miller's Estate, 54 York 133; Sellers' Estate, 51 Lanc. 485, and Moyer Estate, 43 Berks 113, the evidence and circumstances of the transfers indicated decedents had in mind at the time of transfer the precarious condition of their health and that death was soon or likely to ensue. Moreover, no other moving cause is apparent in those cases for making the transfers at the time made. Myers' Estate, 28 Northamp. 246, involved a conveyance intended to take effect in possession or enjoyment at or after death.

After a careful consideration of the testimony in this case and the arguments and briefs of counsel, the evidence establishes, and I find as a fact, that this decedent had no apprehension of death and that contemplation of death was not a moving cause of the transfer here described. The presumption that this transfer was made in contemplation of death has been overcome by the evidence and the appeal is sustained.